UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

Elvira Taveras,                                                  :

                                        Plaintiff,              :

                                                                :

                        -against-                               :

                                                                :

Commissioner of Social Security,                                :

                                                                :

                                        Defendant.             :

-----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/17/2024
```

**OPINION AND ORDER**

22-CV-10825 (KHP)

**THE HONORABLE KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Elvira Taveras ("Plaintiff"), represented by counsel, commenced this action

against Defendant, Commissioner of the Social Security Administration (the "Commissioner"),

pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff seeks judicial review

of the final determination of Defendant that Taveras was not disabled as of June 18, 2018, the

consent date of her alleged disability, and therefore not entitled to Supplemental Security

Income ("SSI") or Social Security Disability ("SSD") benefits on that date.  Plaintiff has moved for

judgment on the pleadings.  For the reasons set forth below, the Court GRANTS Plaintiff's

motion.  The case is remanded to the Commissioner for further proceedings consistent with this

opinion.

## BACKGROUND

Plaintiff, who was born on September 20, 1961, is 62 years old and was 55 years old at

the onset of her alleged disability.  (Administrative Record ("A.R.") 277, ECF No. 8.)  Plaintiff is

not currently married but was previously married from 1995 until 2005. (*Id.*)  Plaintiff has a

sixth-grade education, completed in the Dominican Republic.  (A.R. 55.)  Plaintiff is not able to

communicate in English and testified using an interpreter before the Administrative Law Judge ("ALJ"). (A.R. 20.) Plaintiff's relevant past work was characterized throughout the proceedings as a home attendant, a role she held for nearly 27 years. (A.R. 34, 47, 290, 412.) Plaintiff suffers from hand and knee pain, along with a range of severe impairments including mild degenerative joint disease of the sacroiliac joint, sclerotic changes on her right side at L5, mild degenerative joint disease of the left knee, and mild ulnar entrapment bilaterally. (A.R. 23, 745-746.) Plaintiff also has diabetes and reported occasional migraine attacks, which are nonsevere and did not prevent Plaintiff from working previously. (A.R. at 23.)

On October 3, 2018, Plaintiff filed an application for SSD benefits, and on October 12, 2018, filed an application of SSI benefits. (A.R. 87 96-97.) The onset of disability for both applications was originally June 13, 2017. (A.R. 277-78.) The Social Security Administration denied Plaintiff's applications initially and upon reconsideration. (A.R. 87; 96-97.) Plaintiff then requested a hearing before an ALJ on December 21, 2018. (A.R. 140-142.)

ALJ John Carlton held a hearing on October 31, 2019. (A.R. 41-56.) At the hearing, Plaintiff amended the onset date of her disability to June 13, 2018. (A.R. 46.) The ALJ issued an unfavorable decision on November 29, 2019. (A.R. 104-13.) Plaintiff requested review by the Appeals Council, A.R. at 200-03, and on November 25, 2020, the Appeals Council granted the request for review and remanded the case back to the ALJ for a new hearing and decision. (A.R. 118-22.) Plaintiff attended a second hearing with counsel on February 23, 2021, and affirmed the June 13, 2018 amended onset date. (A.R. 66; *see* A.R. 57-79.) The ALJ issued an unfavorable decision on August 11, 2021. (A.R. 20-35.) Plaintiff again requested review by the Appeals Council, A.R. 274-76, and on October 27, 2022, the Appeals Council denied Plaintiff's request

for review, rendering the ALJ's decision the final decision of the Commissioner.  (A.R. 1-4.)  This action followed.

### 1. Relevant Medical Evidence

### A. Dr. Ernst Ducena

On September 12, 2018, Ms. Taveras was seen by Dr. Ernst Ducena, an internal medicine specialist at the Bronx Health Center.  (A.R. 432.)  She reported that her primary barriers to employment were bilateral knee pain with swelling and severe pain in her left hand. (A.R. 430.)  A medical examination showed full range of motion in the shoulders with mild tenderness.  (A.R. 435-36.)  Plaintiff showed normal strength and sensation in her upper and lower extremities. (A.R. 436.)  There was no effusion or erythema observed on her knee, which had tenderness but a full range of motion.  (*Id.*)  Dr. Ducena did observe decreased flexion of the lumbar spine and tenderness in the lumbar spine and bilateral paraspinal area. (*Id.*)  Finally, Dr. Ducena reported that Ms. Taveras had stiffness and tenderness in her hands. (*Id.*)

Based on his examination, Dr. Ducena opined that Ms. Taveras should be limited to lifting, pulling, or pushing, no more than ten pounds; standing for no more than twenty minutes or sitting for no more than thirty minutes at a time; and walking no more than three blocks. (A.R. 441-442.)  According to Dr. Ducena, Ms. Taveras should not be asked to kneel, squat, or bend because of her knee discomfort.  (A.R. 442.)  In summary, Dr. Ducena recommended that Ms. Taveras be limited in any lifting, alternate between sitting and standing, and be offered a modified workload.  (A.R. 444.)  Dr. Ducena did not recommend any other work limitations or other necessary work accommodations.  (*Id.*)

### B. **Jacobi Examination**

On September 28, 2018, Ms. Taveras was seen at Jacobi Medical Center with a three-month history of pain in her left thigh, in both knees with occasional swelling, and in her left hip and lower back (A.R. 565).  A physical exam revealed tenderness along the femoral shaft. *Id.* She was diagnosed with unusual thigh pain.  (A.R. 566.)  X-rays of the left knee showed mild degenerative changes of the medial femorotibial and patellofemoral compartments (A.R. 819.) X-rays of the lumbar spine revealed mild degenerative changes.  (A.R. 820.)

### B. **Rheumatologist Asena Bache-Altunas**

On March 11, 2019, Ms. Taveras was seen by rheumatologist Asena Bahce-Altuntas, M.D. (A.R. 743).  She described knee and hand pain and that her knee pain worsened with activity.  (A.R. 744.)  A physical exam revealed tenderness in the MCPs, PIPs, elbows, and knees. (A.R. 745.)  The doctor noted a positive Tinel's sign in the left hand, and mild hypothenar atrophy on the left.  (*Id.*)  Dr. Bahce-Altuntas diagnosed discoid lupus and hand and knee pain due to osteoarthritis and carpal tunnel syndrome.  (A.R. 745-746.)  An EMG/NCV13 of the upper extremities performed on March 20, 2019, indicated mild bilateral ulnar nerve entrapment at the elbows.  (A.R. 821.)

On April 24, 2019, Ms. Taveras returned to Dr. Bahce-Altuntas for follow-up regarding her pain. (A.R. 764.)  Plaintiff reported that her knee pain was worse despite use of medication and physical therapy.  (A.R. 765.)  However, no changes were found on physical examination, which showed intact range of motion and full strength in all four extremities.  (A.R. 766.)  Dr. Bahce-Altuntas diagnosed knee pain (likely due to osteoarthritis), back pain, and suspected

carpal tunnel syndrome.  (A.R. 767.)  She prescribed Voltaren, Celebrex, Meloxicam, and

Plaquenil.  (*Id.*)  X-rays of the lumbar spine performed in the office showed chronic right-sided

sclerotic changes at L5.  (A.R. 817.)  An x-ray of the sacroiliac joints revealed mild right SI joint

narrowing.  (A.R. 818.)

At a July 17, 2019, visit with Dr. Bahce-Altuntas, Ms. Taveras described persistent pain.

(A.R. 826-827.)  She also reported she had recently fallen down the stairs. (A.R. 827.)  The

doctor observed mild to moderate distress with ambulating.  (A.R. 827.)  Clinical findings noted

at the time included thickening of the skin in the left lower extremity with dryness, tenderness

with synovitis, bilateral knee tenderness, tenderness of the lateral trochanteric bursa, and mild

hypothenar atrophy on the left. (*Id.*)  The physical exam noted that the knees were tender to

palpation but had a full range of motion.  (*Id.*)  Similarly, the exam found "good" range of

motion of the hips bilaterally.  (*Id.*)

In a Physician's Report of Disability Due to Physical Impairment dated September 20,

2019, Dr. Bahce-Altuntas reported treating Ms. Taveras every 4-6 months since September

2008 for discoid lupus, osteoarthritis, carpal tunnel syndrome, and ulnar nerve entrapment.

(A.R. 1078.)  Clinical diagnostic findings included evidence of mild degenerative changes in the

lumbar spine and knees and mild bilateral ulnar nerve entrapment shown on x-rays and EMG.

(A.R. 1079).  Treatment included oral medications.  (A.R. 1080.)  Dr. Bahce-Altuntas opined Ms.

Taveras would possibly miss work 1-2 times a month, perhaps more or less, depending on her

arthritis symptoms.  (A.R. 1082.)  However, Dr. Bahce-Altuntas deferred answering additional

limitations regarding Plaintiff's functional capacity in a work environment to treating rehab

specialist, Dr Nnabugo Ozurumba (A.R. 1081.)

### c. Physiatrist Nnabugo Ozurumba, M.D.

Physiatrist Nnabugo Ozurumba, a specialist in physical medicine and rehabilitation, evaluated Ms. Taveras on July 18, 2019.  (A.R. 812.)  Plaintiff reported lower back pain radiating to left leg, rated as 8 on a 10-point scale.  (*Id.*)  A physical exam found mild to moderate distress with ambulation, an antalgic gait, bilateral genu valgum with a flexed hip and knee with ambulation, pain and tenderness with both axial and peripheral palpation of the neck, decreased motion of the hips and knees, and weakness of both legs due to pain.  (A.R. 814.)

Dr. Ozurumba recommended physical therapy and use of a lower back brace.  (*Id.*)  On August 1, 2019, Ms. Taveras was seen for fitting of her back brace.  (A.R. 1006.) The physical examination revealed thoracic lordosis, decreased motion in the hips and knees with pain, pain and tenderness in both axial and peripheral sides of the neck, thoracic, and lumbar spine, as well as in the sacroiliac joint, and in the greater trochanters.  (A.R. 1008.)  There was muscle weakness in the left leg and an antalgic gait with use of a cane. (*Id.*)

An EMG/NCV of the lower extremities performed on August 12, 2019 showed evidence suggesting acute S1 radiculopathy. (A.R. 1039-1040.) On August 22, 2019, Ms. Taveras had a follow-up related to her back pain.  (A.R. 1056.)  On exam, there was pain with flexion and extension of the knees, an antalgic gait, and "movements are those of a person far older than she." (A.R. 1057.)  Ms. Taveras' diagnoses were discoid lupus, chronic pain in both knees and in the lumbar spine, and pelvic pain.  (A.R. 1057-1058.)  She was prescribed Plaquenil and Celebrex.  (*Id.*) When seen on September 5, 2019, Ms. Taveras reported falling again, causing pain in her arm but no loss of strength.  (A.R. 1106.)

On October 17, 2019, Dr. Ozurumba completed a Physician's Report of Disability Due to Physical Impairment.  (A.R. 1085-1092.)  Dr. Ozurumba reported having seen Ms. Taveras at four visits for sacroiliac radiculopathy and bilateral knee osteoarthritis.  (A.R. 1085.)  Her low back pain was shooting down both legs on the left more than right all the way to the left foot. (A.R. 1086.)  Dr. Ozurumba noted EMG findings supported a diagnosis of S1 radiculopathy. (*Id.*) Treatment consisted of physical therapy, a lumbar brace, and medications (A.R. 1087).

Dr. Ozurumba opined Ms. Taveras was able to sit 1-2 hours at a time and 4 hours total in 8-hour workday. (A.R. 1088.)  She also estimated Plaintiff could stand 1-2 hours for a total of 4 hours during the day.  (*Id.*)  She noted Ms. Taveras's ambulation was "very poor" and required use of a cane.  (*Id.*)  Ms. Taveras could occasionally lift and carry 10 pounds.  (A.R. 1088-1089.) She could never crawl or climb, and only occasionally bend, stoop, but could frequently reach. (A.R. 1089.)  Ms. Taveras could frequently engage in fine manipulation of objects, and occasionally handle objects or push and pull arm controls. (*Id.*)  Dr. Ozurumba found Ms. Taveras would have difficulty traveling by bus or subway due to her poor ambulation with use of a cane and back brace. (A.R. 1090.)

### D. Physical Therapy and Primary Care Exams

On November 20, 2019, Ms. Taveras had a physical therapy evaluation with Gamal Abdelrahman, PT.  (A.R. 1094.)   She described low back and knee pain with an unsteady gait and pain radiating to the hips and buttocks.  (*Id.*)  A physical examination revealed ambulation with an antalgic gait, tenderness in the paraspinal muscles, glutes, and hamstrings, extension-based pain, muscle spasms, weakness and decreased motion in the lumbar spine, and fair

balance.  (*Id.*)  The physical therapist ("PT") noted Ms. Taveras demonstrated moderate difficulty in ambulation with a decreased tolerance in doing basic activities of daily living such as sitting.  (*Id.*)  Subsequent notes document regular physical therapy through January 8, 2020.  (A.R. 1097-1102.)

On March 11, 2020, Ms. Taveras was seen for a primary care visit, reporting back and knee pain.  (A.R. 1117-1118.)  The physician noted Plaintiff had full strength in all four extremities and reported some improvement in her symptoms with physical therapy.  (A.R. 1118.)  Plaintiff reported that she would be traveling to the Dominican Republic for two weeks.  (*Id.*)  An examination found minimal effusions in both knees.  (A.R. 1119.)  At a July 21, 2020 visit, Ms. Taveras reported pain in her lower back and knees.  (A.R. 1120).  Physical exam revealed psoas muscle tenderness and that her right hip was higher than the left.  (A.R. 1121.)

On October 7, 2020, Ms. Taveras returned to physical therapy.  (A.R.  1105).  She had continued symptoms of lumbar radiculopathy, pain in both knees, and pain in the thoracic spine.  (*Id.*)  On physical exam, there was evidence of tenderness and tightness in the back, but improvement in the pain.  (*Id.*)  The PT noted Ms. Taveras had "minimum difficulty" with standing.  (*Id.*)  The PT opined that Ms. Taveras could stand for at least 20 minutes, sit for at least 30 minutes, and walk at least eight blocks.  (*Id.*)  Additional physical therapy was recommended to address goals including, normalizing Ms. Taveras's gait and enabling her to "walk independently without device."  (*Id.*)

### E. John Fkiaras MD, SSA Consultive Examiner

Dr. Fkiaras evaluated Ms. Taveras at the behest of the Social Security Administration on October 29, 2018.  (A.R. 605.)  She reported symptoms of pain in her knees, thighs, hands, low back, left shoulder, and both elbows, rated as 8 on a 10-point scale. (*Id*.)  She also had migraines approximately twice a week that required her to go to a quiet, dark room.  (*Id.*)  The examiner noted that Ms. Taveras cooked daily, cleaned once a week, did the laundry once every two weeks, and shopped once a month. (A.R. 606.)  A physical examination revealed an antalgic gait, an inability to perform heel or toe walking, squatting limited to 1/5 of normal while holding the exam table, limited motion in the cervical spine, pain on palpation of the left thoracic spine, limited motion in the lumbar spine, pain with palpation of the lumbar spine, limited motion in the shoulders, limited motion in the hips, limited motion of the knees, weakness of both upper extremities and both lower extremities, and weakness of left grip strength.  (A.R. 606-608.)

Dr. Fkiaras diagnosed (unspecified) lupus, bilateral knee pain, bilateral thigh pain, bilateral hand pain, low back pain, left shoulder pain, bilateral elbow pain, migraines, and dizziness.  (A.R. 608.)  The consultant opined Ms. Taveras had "moderate to marked" limitations performing repetitive heavy lifting, carrying, pushing, pulling, squatting, crouching, bending, climbing stairs.  (*Id.*)  She had "moderate" limitations walking and standing for extended periods.  (*Id.*)  The consultant noted "marked" limitations driving, operating machinery, and performing tasks with exposure to unprotected heights.  (*Id.*)  On November 29, 2018, State agency medical consultant Dr. M. Kirsch reviewed the record and opined that Plaintiff had no severe impairments.  (A.R. 83-84.)

**2. Hearings before the ALJ**

Ms. Taveras first appeared before ALJ John Carlton on October 31, 2019. (A.R. 44.) At the hearing, Ms. Taveras amended the date of the onset of her disability to June 12, 2018. (A.R. 46.) The ALJ confirmed that Ms. Taveras was in fact working until that date. (A.R. 47.) Ms. Taveras described her past work as a home attendant, where she would help her client bathe, dress, clean their home, shop for food, and do laundry. (*Id.*) She testified that this work required heavy lifting when helping the client bathe, or when shoveling snow. (A.R. 48.)

Ms. Taveras testified that she stopped working due to worsening pain in her back and knees. (A.R. 48-49.) As a result, she could not bend or sit for long periods and has pain in her hands that interferes with her ability to hold things. (A.R. 50.) She testified that she started using a cane approximately six months before her first hearing, prescribed by one of her doctors. (A.R. 53.) The ALJ asked which doctor had prescribed the cane, and counsel for Ms. Taveras stated that they did not have a prescription. (*Id.*) Ms. Taveras stated she lives with her daughter and two grandchildren. (A.R. 53-54.) Her daughter does the cooking, cleaning, and grocery shopping. (A.R. 54.) She takes a taxi to medical appointments. (A.R. 55.) Ms. Taveras stated that physical therapy helps but medication does not reduce her pain. (A.R. 51.)

Following remand from the Appeals Council, Ms. Taveras appeared before the ALJ for a second time on February 23, 2021. (A.R. 57.)   She reported having infrequent doctor visits since the start of the COVID pandemic. (A.R. 72.) Ms. Taveras testified that she continued to use a cane, although she tried only to use the cane when she left the house. (A.R. 69.) She stated that she experienced pain in her knees and back, especially when bending. (A.R. 71.)

Mary Vasishth, a vocational expert ("VE"), testified that Ms. Taveras's past work was best classified as a home attendant, a semi-skilled occupation at a medium exertional level. (A.R. 75.)  When asked whether a medium level of exertion was appropriate based upon Ms. Taveras's testimony, the VE testified that she could not hear what Ms. Taveras said.  (*Id.*) However, the ALJ concluded that since her previous role required lifting more than 20 pounds, such as when shoveling show, that Ms. Taveras could not resume her previous work.  (A.R. 76.) When asked if there were any transferrable skills from the home attendant position to someone limited to light work, the EV testified that the skills would be transferable to the role of companion.  (A.R. 76.)  However, according to the VE, if an individual needed a cane for ambulation, she could not perform this job because it occasionally required use of both hands. (A.R. 76.)

### 3. The ALJ's Decision

In a decision dated August 11, 2021, the ALJ found that Plaintiff had the following severe impairments: mild degenerative joint disease of the sacroiliac joint; sclerotic changes on right side of L5, possibly secondary to spondylolysis; mild degenerative joint disease of the left knee; and mild ulnar entrapment bilaterally.  (A.R.  23.)   The ALJ also determined that Ms. Taveras had the following nonsevere impairments including migraine headaches, discoid lupus, diabetes, and incontinence.  (A.R.  23-24.)  The secondary impairments were determined to be non-severe in part because they pre-dated the alleged onset of disability, and because there was no evidence in the record that these impairments had more than a minimal effect on her ability to carry out basic work activities. (A.R. 24.)

The ALJ then determined that the severe impairments did not meet or equal the severity of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P after considering four enumerated listings. (A.R. 24-25.) Therefore, the ALJ found that despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (A.R. 25.) In assessing these limitations, the ALJ acknowledged Plaintiff's physical impairments and complaints of difficulty walking, climbing, standing, lifting, carrying, bending, grasping, and kneeling. (A.R. 25-26; referring to A.R. 309-15.) The ALJ determined that Ms. Taveras's impairments could reasonably be expected to cause Ms. Taveras's symptoms, but also concluded that her claims of disabling symptoms and limitations, particularly their severity and frequency, were not consistent with the record given several generally unremarkable physical examination findings during the relevant period. (A.R. 25-31.)

The ALJ surveyed the treatment notes in the record and noted that physical examination findings in September 2018 showed full range of motion (FROM) in the shoulders with mild tenderness, no instability, and normal strength and sensation; she also had full range of motion in the knees, negative straight leg raise testing, and normal strength and sensation in the lower extremities. (A.R. 29-30; see A.R. 440.) The ALJ also noted that Jacobi Medical Center treatment notes showed Plaintiff had full range of motion in the knees and hips with no tenderness and negative straight leg raise testing. (A.R. 27; see A.R. 565.) During a follow-up visit in March 2019, Plaintiff had tenderness, but was neurologically intact and had full (5/5) strength in all four extremities. (A.R. 27. see A.R. 866.) In June 2019, Plaintiff had full range of motion in the knees and good range of motion in the hips, with some tenderness. (A.R. 892.)

Similarly, in July 2019, Plaintiff reported tender knees, but had full passive range of motion in the knees and good range of motion in the hips. (A.R. 827.) In November 2019, Plaintiff had unremarkable physical examination findings, including normal range of motion and no edema or tenderness on examination, and in January 2020, Plaintiff had full strength in all extremities. (A.R. 1112, 1117.) In March 2020, Plaintiff reported improvement with physical therapy and stated that she was traveling to the Dominican Republic for two weeks; a physical examination revealed minimal effusions in the knees. (A.R. 1118-19.) The ALJ also considered the diagnostic studies, which showed mild degenerative changes in the left knee, mild right sacroiliac joint narrowing, mild bilateral ulnar nerve entrapment at the elbows, and chronic right-sided sclerotic changes at L5. (A.R. 817-21.) The ALJ also considered that Plaintiff mainly took Tylenol for pain management, and that she took other medications intermittently. (A.R. 28; see A.R. 974, 1116.)

The ALJ proceeded to consider the medical opinion evidence and prior administrative medical findings, concluding he could not assign any specific evidentiary weight to any of those sources. (A.R. 31-33.) First, the ALJ explained that the opinion of Dr. Ducena was not persuasive because his exam revealed no effusions, laxity, or deficits in strength. A.R. 31. Further, the ALJ stated that a reduced range of work to the sedentary level was inconsistent with only "mild changes" on objective imaging of the spine, joints, and left knee. Id.

Next, the ALJ found Dr. Fkiaras opinion was not persuasive because it was based on a single examination and was inconsistent with other evidence in the record. *Id.* For example, Dr. Fkiaras opined that Plaintiff had moderate-to-marked limitation for repetitive heavy lifting, carrying, pushing, pulling, squatting, crouching, and bending; a moderate limitation for walking

and standing extended periods; and a marked limitation for climbing stairs, driving, operating

machinery, and exposure to unprotected heights. (A.R.  608.)  The ALJ stated that Dr. Fkiaras'

opinions of marked limitations were not consistent with the objective evidence showing only

mild degenerative changes in the spine, sacroiliac joint, left knee, and arms. (A.R.  32; see A.R.

817-21.)  The ALJ also found that Dr. Fkiaras' opined limitations were not consistent with the

physical examination findings showing good ranges of motion, full strength, and intact

sensation. (A.R.  32; see A.R.  440, 565, 827, 866, 892, 1112, 1117.)

The ALJ also considered Dr. Bahce-Altuntas' opinion that Plaintiff would miss some days

of work, one or two on average but much more depending on arthritis flare ups.  (A.R.  32.) The

ALJ found Dr. Bahce-Altuntas' opinion not persuasive because it was not supported by the

negative labs for lupus or systemic inflammation. *Id.*  The ALJ stated that missing work due to

pain or other symptoms was not consistent with Plaintiff's inconsistent use of medication and

reports of using Tylenol for conservative management. *Id.*  Finally, he concluded her opinion

was inconsistent with recent exams showing minimal effusions of the knees with a normal gait.

*Id.*

The ALJ next evaluated Dr. Ozurumba's October 2019 medical opinion and found it not

persuasive because it was not consistent with objective medical evidence in the record. (A.R.

32-33.) The ALJ noted that the doctor's limitations were not consistent with the record showing

only mild bilateral ulnar entrapment, improvement with a back brace, normal gait on the most

recent examination, intact ranges of motion, and intact strength.  *Id.*

Finally, the ALJ also evaluated Dr. Kirsche's previous administrative medical finding that

Plaintiff had no severe impairments, which the ALJ also found not persuasive because the

record showed severe impairments that limited Plaintiff to light exertional work. (A.R. 33.) In summation, the ALJ determined that the evidence was consistent with a finding that Plaintiff had severe impairments but that these still enabled plaintiff to perform a full range of light work.

After assessing Plaintiff's residual functional capacity based on the above evidence, the ALJ concluded that Plaintiff would not be able to perform any past relevant work. A.R. 33-34. The ALJ in part relied on vocational expert testimony and found that Plaintiff was unable to perform her past relevant work.  (A.R.  33-24; see A.R.  75-76.) The ALJ then proceeded to step five and, again relying on vocational expert testimony, found that Plaintiff could perform other work as a companion, which exists in significant numbers in the national economy. A.R.  34-35; see A.R.  76. In sum, the ALJ concluded that Plaintiff had transferrable skills from her previous work that would be applicable to the role of companion with little if any vocational adjustment. A.R. 35.  Accordingly, the ALJ concluded that Plaintiff was not disabled and denied Plaintiff's claims for DIB and SSI. (A.R. 35.)

## LEGAL STANDARDS

A court reviewing a final decision by the Commissioner must, as a threshold matter, determine whether the ALJ provided the plaintiff with a full and fair hearing under the Secretary's regulations and fully and completely developed the administrative record. *Intonato v. Colvin*, 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (citation omitted).  The duty to develop the record requires the ALJ "to ensure that the record contains sufficient evidence to make a determination."  *Bussi v. Barnhart*, 2003 WL 21283448, at *8 (S.D.N.Y. June 3, 2003).

Once the court is satisfied that the plaintiff was afforded a full hearing and the record is fully

developed, the court then assesses the Commissioner's conclusions.  In doing so, the court is

limited to determining whether the Commissioner's conclusions (1) "were supported by

substantial evidence in the record" and (2) "were based on a correct legal standard." *Selian v.*

*Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (citation omitted).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).  To be supported by

substantial evidence, the ALJ's decision must be based on "all evidence available in [the

claimant]'s case record." 42 U.S.C. §§ 423(d)(5)(B).  The ALJ's decision must set forth "a

discussion of the evidence" and the "reasons upon which [the decision] is based." Id. §

405(b)(1).  It must do so "with sufficient specificity to enable the reviewing court to decide

whether the determination is supported by substantial evidence." *Herrera v. Comm'r of Soc.*

*Sec.*, 2021 WL 4909955, at *5 (S.D.N.Y. Oct. 21, 2021) (citation omitted).

That said, the ALJ need not "mention [ ] every item of testimony presented," *Mongeur v.*

*Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983), or "reconcile explicitly every conflicting shred of

medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). If the ALJ fails to

consider evidence in the record, the Court must be "able to look to other portions of the ALJ's

decision and to clearly credible evidence" to find that the determination was supported by

substantial evidence. *Mongeur*, 722 F.2d at 1040 (citation omitted).  If the Commissioner's

findings are supported by substantial evidence, those findings are conclusive.  42 U.S.C. §

405(g); see also *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

As to the correct legal standard, the Commissioner is required to conduct a sequential five-step inquiry to determine: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) if not, whether the claimant has a "severe impairment" that limits their ability to do basic work activities; (3) if so, whether the impairment is listed in Appendix 1 of the regulations, and what the claimant's RFC is; (4) if the impairment does not qualify as a listed impairment, whether the claimant possesses the RFC to perform their past work; and (5) if the claimant is not capable of performing past work, whether they are capable of performing other work that exists in the national economy. *Vellone v. Saul*, 2021 WL 319354, at *5 (S.D.N.Y. Jan. 29, 2021), report and recommendation adopted sub nom. *Vellone* on behalf of Vellone v. Saul, 2021 WL 2801138 (S.D.N.Y. July 6, 2021). The claimant bears the burden of proof at the first four steps of the analysis, and at the last step, the Commissioner has the burden to show there is other work the claimant can perform.  *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).

When considering the medical opinions, the Commissioner must consider five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The supportability and consistency factors are the "most important," and ALJs must explain how they considered those factors for medical opinions. Id. §§ 416.920a, 416.920c(b)(2).  The supportability inquiry focuses on how well a medical source supported and explained their opinion.  *Vellone*, 2021 WL 319354, at *6. The question of consistency concerns whether the opinion is consistent with other evidence in the medical record.  *Id.* The Commissioner is tasked with analyzing medical opinions at the source-level, meaning the Commissioner need not discuss each medical opinion in the record,

and may apply the five factors holistically to a single medical source.  20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

Regarding claims filed on or after March 27, 2017, in evaluating the medical evidence, the Commissioner need not assign evidentiary weight to treating physicians as was previously required by the Act.  *Vellone*, 2021 WL 319354, at *6.  However, the regulations continue to recognize the "foundational nature" of the observations of treating sources.  *Steven M.W. v. Comm'r of Soc. Sec.*, 2022 WL 2669491, at *6 (S.D.N.Y. June 17, 2022), *report and recommendation adopted sub nom.*, *Washburn v. Comm'r of Soc. Sec.*, 2022 WL 2669296 (S.D.N.Y. July 11, 2022).

An ALJ's evaluation as to the claimant's subjective statements about their symptoms and resulting limitations is entitled to deference by a reviewing court.  *Osorio v. Barnhart*, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006).  Therefore, "[i]f the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." *Id.*  SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(a)).  Instead. the ALJ must follow a two-step framework for evaluating allegations of pain and other limitations.  *Id.*

First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged.  *Id.* (citing 20 C.F.R. § 404.1529(b)).  "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (citing 20 C.F.R. § 404.1529(a)).  To make that determination, the ALJ must consider (in addition to objective medical evidence):  1. The individual's daily activities; 2. [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *Pena*, 2008 WL 5111317, at *11 (citing SSR 96-7p, 1996 WL 374186, at *3 (SSA July 2, 1996)).

## DISCUSSION

As an initial matter, the parties do not dispute whether the ALJ provided Plaintiff with a full and fair hearing under the Secretary's regulations and completely developed the administrative record.  Accordingly, the Court turns to the question of whether the ALJ's conclusions were supported by substantial evidence in the record and were based on a correct legal standard.

Plaintiff argues that this case should be reversed or, in the alternative, remanded, because the ALJ failed to properly evaluate both the medical evidence and Plaintiff's subjective statements when making the RFC determination.  Specifically, Plaintiff contends that the ALJ erred to the extent that he concluded that the opinions from all the medical examiners – along

with her subjective statements - were inconsistent and unsupported by record and including

Plaintiff's reported activities of daily living.  Plaintiff also argues that the ALJ erred at step five

by determining Ms. Taveras could perform the full range of light work and then only identifying

a single occupation that exists in the national economy for Ms. Taveras at that exertional level,

as a companion. *See* A.R. 35; DOT #309.677-010.[1]  Plaintiff argues that one occupation cannot

constitute a "range" of work, as required for applicants of advanced age with a functional

restriction to light work under Appendix 2 to Subpart  P of Part 404, Section 202.00(c) of the

Medical-Vocational Guidelines.

The Commissioner argues that (1) the ALJ properly weighed the medical opinions, and

(2) substantial evidence supported the ALJ's evaluations of the medical evidence and the RFC.

Specifically, the Commissioner argues that the ALJ reasonably found that numerous normal or

"mild" examination results in the record undermined the restrictive limitations identified by the

treating providers or in Ms. Taveras's subjective statements.  Finally, the Commissioner argues

that in the Second Circuit, the Commissioner need show only one job existing in the national

economy at step five.

For the following reasons, the Court concludes that (1) the ALJ's evaluation of the medical

opinion evidence and subjective statements applied the correct legal standard, (2) the ALJ's RFC

was not supported by substantial evidence, and (3) the ALJ erred by only identifying one job

that Ms. Taveras could perform within the national economy at step five.

---

[1] The Dictionary of Occupational Titles list the responsibilities of a companion as: "Cares for elderly, handicapped, or convalescent persons: Attends to employer's personal needs [PERSONAL ATTENDANT (domestic ser.)]. Transacts social or business affairs [SOCIAL SECRETARY (clerical)]. Reads aloud, plays cards, or other games to entertain employer. Accompanies employer on trips and outings. May prepare and serve meals to employer."

**A.  The ALJ's Evaluation of the Medical Opinions and Subjective Statements**

*1.  Medical Opinions*

As discussed above, the new SSA regulations require an ALJ to consider several factors when evaluating the medical opinion evidence in the record, "most importantly, the 'supportability' and 'consistency' of each submitted opinion." *Velasquez*, 2021 WL 4392986, at *25.  An ALJ must "specifically" explain "how well a medical source supports their own opinion(s) and how consistent a medical source/opinion is with the medical evidence as a whole." *Acosta Cuevas*, 2021 WL 363682, at *14.  Plaintiff argues that the ALJ erred by rejecting the opinion of every examining doctor in the record as inconsistent, lacking support, and therefore not persuasive.   However, in his decision, the ALJ considered the opinions of all five medical sources who opined on Ms. Taveras's physical impairments: Dr. Ernest Ducena, Dr. John Fkiaras, Dr. Asena Bache-Altunas, Dr. Ozurumba, and Dr. M. Kirsch.  AR at 32–33.  The only provider not addressed by the ALJ was a physical therapist, Gamal Abdelrahman.  *See* A.R. 1094. PTs are not an acceptable medical source under the regulations, and their opinion is not due any controlling weight. *Brush v. Berryhill*, 294 F. Supp. 3d 241, 257 (S.D.N.Y. 2018)(collecting cases).

For the medical opinions discussed above, the ALJ evaluated both the supportability and consistency of their medical opinions.  First, the ALJ noted that Dr. Ducena provided "little support" for his opinion that Ms. Taveras, among other impairments, had limitations in kneeling, squatting, repetitive bending, crouching, stooping; difficulty grasping and handling heavy objects such that she should be limited to sedentary work.  A.R. 31.  Specifically, the ALJ noted that Dr. Ducena's own exam did not show any effusion, laxity, deficits in strength, or limit

in lumbar flexion to 90 degrees. *Id.* The ALJ then noted that Dr. Ducena's recommendation of sedentary work was inconsistent with the lack of evidence of neurologic deficits shown in his exam, "mild" changes on objective imaging of the spine, and several other exams showing intact hand and finger dexterity and full range of motion in the back. A.R. 31-32.

The ALJ next evaluated the opinion of Dr. Fkiaras and similarly found his opined limitations were insufficiently supported by the objective medical evidence and inconsistent with both his own and other exam results. A.R. 32. For example, although Dr. Fkiaras opined that Ms. Taveras would have marked limitations climbing stairs, lifting, caring, pushing, pulling, squatting, and crouching – that was not supported by his own exam showing no muscle atrophy, no joint tenderness, and no neurologic deficits. *Id.* Similarly, the ALJ concluded that the suggested "marked" limitations in postural maneuvers was not consistent with at least three other exams showing good range of motion of the back and hips. *Id.*

The ALJ next concluded that Dr. Bahce-Altuntas's medical opinion, that Plaintiff would possibly miss at least 1 or 2 days of work per month due to arthritis, was not persuasive because of a lack both of support and internal consistency. *Id.* The ALJ noted that Dr. Bahe-Altuntas herself reported that she could not provide an opinion on Ms. Taveras's functional abilities, and that her exam resulted in negative labs for systemic lupus and inflammation. *Id.* The ALJ also noted the claim that Ms. Taveras would have to miss work due to pain was not consistent with her most recent exams showing only "minimal" effusions of the knee while maintaining a normal gait. *Id.* The ALJ similarly concluded the opinion of Dr. Ozurumba was insufficiently supported in part because Dr. Ozurumba's imaging found only mild osteoarthritis of one knee. A.R. 33. When considering consistency, the ALJ noted that Dr. Ozurumba's opined

limitations were inconsistent with Plaintiff's most recent exam showing a normal gait and

"numerous" exams showing Plaintiff maintained a full range of motion.  *Id.*

Finally, the ALJ dismissed the prior administrative findings of the state agency medical

consultant, Dr. Kirsch, as unpersuasive.  *Id.*  Dr. Krirsch's opinion was the only one to suggest

that Ms. Taveras had no severe impairments.  *Id.*  The ALJ noted that Dr. Kirsch supported his

findings only with review of the record, which included imaging showing only minimal

degenerative changes of the left knee and stable joints.  However, given other evidence

showing mild changes of several joints including the lumbar spine, the examiner's findings of no

impairments were not consistent with other evidence in the record either.  *Id.*  Evaluating all of

the opinions together, the ALJ concluded that the medical evidence was consistent instead with

Ms. Taveras's severe impairments, but that Plaintiff would still be able to perform a full range

of light work as defined the in regulations.  *Id.*

Plaintiff argues that the ALJ improperly "focused" on Ms. Taveras's conservative course of

treatment as an inconsistency when evaluating each medical opinion.  However, it is not

improper for an ALJ to suggest that a conversative treatment plan is inconsistent with a medical

opinion that simultaneously reports extreme limitations. *See e.g., Tricarico v. Colvin*, 681 F.

App'x 98, 100 (2d Cir. 2017).  Second, as described above, the conservative course of treatment

was only one of several factors in the ALJ's analysis of each opinion's supportability and

consistency.  It is not accurate to suggest that the ALJ relied solely on Ms. Taveras's inconsistent

use of medication, mostly Tylenol, when determining the medical opinions were not

persuasive. *See* A.R. 28; 1116.

In short, the ALJ evaluated every medical opinion provided by a physician for its supportability and consistency with the objective medical evidence and the record as a whole. While Plaintiff has identified evidence to suggest there was evidence to find the physicians' opinions of more extreme limitations were persuasive, "whether there is substantial evidence supporting the [plaintiff's] view is not the question here; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013).  Plaintiff's disagreement with the ALJ's assessment of the evidence is not a basis for remand.  *See Wilson o/b/o J.J.W. v. Comm'r of Soc. Sec.*, No. 1:19-CV-737-DB, 2020 WL 3447800, at *5 (W.D.N.Y. June 24, 2020) ([M]ere disagreement with the ALJ's findings does not warrant remand.")  Instead, the Court must defer to the ALJ where, as here, each of the opinions was properly considered under the required factors, and substantial evidence – that is sufficient evidence "as a reasonable mind might accept as adequate to support a conclusion" — supports the ALJ's evaluation.  Accordingly, the Court finds no error in the evaluation of the medical opinion evidence.

.   *2. Subjective Statements*

In his decision, the ALJ considered Ms. Taveras's subjective statements about her symptoms and limitations by applying the required two-step process.  At step one, the ALJ concluded Ms. Taveras' "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  At step two, the ALJ concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms was "not entirely consistent with the medical evidence and other evidence in the record."  (A.R. 26.)  Plaintiff alleges that the ALJ's conclusion lacked "any nexus to the medical record," erroneously did not credit Ms.

Taveras' statements that she needs a cane, and overestimated the extent to which Ms. Taveras engages in some activities of daily living.  (A.R 31). This argument is not persuasive.

The ALJ's decision is replete with citations to the medical record including to clinical findings and treatment history notes that contradicted some of Ms. Taveras' subjective statements.  (A.R. 26-27.)  For instance, when evaluating Plaintiff's report of back pain, the ALJ cited to evidence from at least four exams wherein Plaintiff either did not report any back pain, or no abnormalities were observed in the back.  (A.R. 27-28.)  When evaluating Ms. Taveras's use of a cane, the ALJ did note that there was no evidence that the cane was prescribed, but that was when assessing her ultimate residual functional capacity, not considering the credibility of her subjective statements. (A.R. 30.)  Further, Ms. Taveras testified that she generally does not use her cane in her home.  (A.R. 69)

Finally, the ALJ only briefly discussed Ms. Taveras's participation in the activities of daily life, specifically that Plaintiff reported helping her daughter with her twins and traveling to the Dominican Republic in early 2020.  (A.R. 31.)  There is nothing to suggest that this factor was at all decisive in the ALJ's determination. Plaintiff's citation to *Murdaugh v. Sec. of Dep't of HHS of U.S.*, is inapposite, as unlike in that case, the ALJ here did not rely on Ms. Taveras's daily activities to "controvert the medical evidence."  837 F.2d 99, 102 (2d Cir.)   Other medical evidence, including as Dr. Fkiaras's October 2018 report, noted Ms. Taveras cooked daily, and regularly cleaned, and occasionally shopped.  (A.R. 606.)  Further, other courts in the Second Circuit have considered international travel during the disability period to be relevant to the ALJ's analysis. *See e.g., Luzarraga v. Colvin*, 2015 WL 1321665, at *8 (E.D.N.Y. Mar. 24, 2015); *see also Joey A. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 855584, at *7 (D. Conn. Mar. 23, 2022).

And, while the Court recognizes Plaintiff's strong work history entitles her to some deference, there is no indication that the ALJ disregarded Plaintiff's work history.  Rather, the ALJ's assessment was based on contemporaneous activities and medical findings, and this was entirely proper.

Therefore, the Court finds no error in the in the evaluation of Plaintiff's subjective statements about her symptoms and limitations.

### B.  The ALJ's RFC Determination

Plaintiff argues that the ALJ failed to cite any evidence that supported a determination that Ms. Taveras could do the full range light work, warranting a remand.  The Commissioner argues that the ALJ summarized and analyzed the entire medical record when analyzing the medical and subjective opinion evidence, and therefore the RFC determination was also supported by substantial evidence.  The ALJ did ground its RFC finding in some medical evidence including tests results that showed normal ranges of motion, intact sensation, and full motor strength in at least two extremities. (A.R. 31) However, since the ALJ's rejected all medical opinion evidence as not persuasive, the RFC determination required the ALJ to engaged in his own assessment of the medical record as a whole.

As a preliminary matter, "light work" generally requires standing/walking at least 6 hours a day and sitting the rest of the day, as well as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [Plaintiff] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); § 416.967(b); Social Security Ruling 83-10 (1983 WL 31251).

Upon review of the record, there is no medical evidence persuasive or otherwise, that Ms. Taveras could ever lift more than ten pounds, or even regularly lift ten pounds.  Dr. Ozurumba opined that Ms. Taveras could occasionally lift and carry 10 pounds. (A.R. 1088-1089).  Dr. Fkiaras opined Ms. Taveras had "moderate to marked" limitations performing repetitive heavy lifting, carrying, pushing, pulling, squatting, crouching, and bending. (A.R. 608.)  Dr. Ducena opined Ms. Taveras could lift *at most* ten pounds.  (A.R. 441-442.)   At her first hearing before the ALJ, Ms. Taveras indicated she had trouble lifting heavy pots on to the stove. (A.R. 52.)  Similarly, there is no medical opinion evidence that indicates Ms. Taveras could do "a good deal of walking or standing" for more than four hours a day, let alone eight. *See id* (limited to standing or sitting for 30 minutes, walking up to three blocks);  *see also* (A.R. 608) (finding moderate limitation standing and walking for extended periods); *see also* (A.R. 1088) (finding Ms. Taveras could sit or stand for one or two hours at a time, up to four); (A.R.  50) (Plaintiff testimony regarding difficulty walking and standing for extended periods.)  The *closest* a source comes to suggesting Ms. Taveras could fulfill those responsibilities was the physical therapist, who opined that she could sit for *at least* thirty minutes, stand for *at least* twenty minutes, and walk *at least* eight blocks.  A.R. 1088-1089.  The ALJ did not engage in any analysis of the supportability or credibility of the PT's opinion, though did rely on treatment notes from PT sessions that indicated improvements or mild findings. (A.R. 29.)

When an ALJ rejects all the medical opinion evidence, they are not free to engage in their own evaluations of the medical findings to determine a RFC.  *Leslie H. L. v. Comm'r of Soc. Sec. Admin.*, No. 21 CV 150 (SALM), 2021 WL 5937649, at *4 (D. Conn. Dec. 16, 2021). Since the ALJ

here rejected all of the medical opinion evidence, the ALJ had "little affirmative evidence on which to rely in making his assessment." *Badillo v. Berryhill*, No. 18 CV 8414 (ER), 2020 WL 1528118, at *9 (S.D.N.Y. Mar. 31, 2020). Here, the ALJ rejected all of the testimony in the record that suggested Ms. Taveras could not sit, stand, or walk for the time required for the full range of light work, and then proceeded to cite to specific findings such as certain imaging results (observing "only mild changes.... of the spine, right sacroiliac joint, and left knee"), or the results of some exam procedures that indicated "full strength" in extremities.  A.R. 31. However, a finding of "full strength" in the extremities is not evidence of how much the Plaintiff can lift.  *See Sally H. v. Comm'r of Soc. Sec.*, No. 2:18-CV-00224, 2020 WL 6375571, at *10 (D. Vt. Oct. 30, 2020)(holding RFC finding of medium work was not supported by substantial evidence where Plaintiff had shown "full strength" in physical exams, but three medical opinions declined to opine Plaintiff was capable of lifting 25 pounds.)  Instead, "cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement. . . and to treat them as a basis for concluding a claimant is capable of working."  *Id*. at *9 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019).

The ALJ's lay analysis of raw medical data, coupled with his observation that Plaintiff's improved with a back brace, is hardly "substantial evidence" that Ms. Taveras is capable of more physical activity than *any* of her medical providers ever contemplated possible. Numerous courts in this Circuit have found that when an ALJ, as here, rejects all of the medical opinion evidence and formulates an RFC based on their own lay interpretation of the medical data, the RFC is not supported by substantial evidence and remand is proper.  *See e.g., Navedo*

*v. Kijakazi*, 616 F. Supp. 3d 332, 349–50 (S.D.N.Y. 2022); *McGrath v. Comm'r of Soc. Sec.*, No.

1:20-CV-03042-FB, 2021 WL 5281317, at *1–2 (E.D.N.Y. Nov. 12, 2021)(collecting cases).

### C.   The ALJ Erred by Failing to Find a Significant Range of Work Exists for Plaintiff

Plaintiff argues that because Plaintiff was 55 as of the onset date of her disability, and

therefore in the "advanced age" category, the ALJ erred by only identifying a single role that

Plaintiff could have in the national economy.  Appendix 2 to Subpart P of Part 404, Section

202.00(c) provides:

> [F]or individuals of advanced age who can no longer perform vocationally relevant past
> work and who have a history of unskilled work experience, or who have only skills that are
> not readily transferable to a significant range of semi-skilled or skilled work that is within
> the individual's functional capacity, or who have no work experience, the limitations in
> vocational adaptability represented by functional restriction to light work warrant a finding
> of disabled

Plaintiff asks this Court to apply the interpretation of Appendix 2 to Subpart P of Part 404,

Section 202.00(c) in the same manner as the Ninth Circuit did in *Lounsburry v. Barnhart*, 468

F.3d 1111 (9th Cir. 2006).  In that case, the Ninth Circuit concluded that the identification of

only a single job for an individual is not consistent with the plain meaning of a "significant range

of work" that is required to direct a finding of not disabled for an individual in the advanced age

category limited to light work.

In *Lounsburry*, as here, the ALJ determined that Plaintiff was limited to the full range of light

work, and identified a single role she could fulfill within the national economy.  Plaintiff argued

that a single occupation cannot constitute "a significant range" of work and that Plaintiff was

therefore disabled.  *Lounsburry,* 468 F.3d at 1114.  The Court in *Lounsburry* first considered

that, "Social Security Ruling 83–10 (1983) defines the phrase, 'Range of Work,' as

'*Occupations* existing at an exertional level.'" *Id.* at 1117.  The same Social Security ruling

defines the related phrase, "Full Range of Work," as: "All or substantially all *occupations* existing at an exertional level." *Id*. Taken together, the Court concluded that the term "work" under Rule 202.00(c) means distinct *occupations*, and a "significant range of work" therefore requires the identification of more than one job. *Id.* This Court finds the reasoning in *Lounsburry* to be sound.

In a decision issued two years after *Lounsburry*, the Ninth Circuit again considered the importance of the phrase "significant range of work" in connection with the step five analysis for individuals of advanced age. *Tommasetti v. Astrue*, 533 F.3d 1035, 1042-44 (9th Cir. 2008). In *Tommasetti*, the claimant was an individual of advanced age with transferrable skills and limited to *sedentary* work. *Id.* The court, noting the precedent in *Lounsburry*, explained that the *Lounsburry* holding was based on the presence of the language "significant range of work" in GRID 202.00, applicable only to light work. *Id*. Therefore, the court distinguished the case from *Lounsbury*, finding that GRIDS 201.07 and 201.00, applicable to the *sedentary exertion* RFCs, do not contain the "significant range" language and therefore only a "significant number" of jobs had to be identified where an individual is of advanced age, and limited to sedentary work. *Tommasetti*, 533 F.3d at 1042-44.

The Commissioner's contention that the Second Circuit has already addressed the issue of whether a "single occupation" can constitute a "significant range of work" at step five for an individual in the "advanced age" category is not persuasive, as the cases it cites are inapposite. The Social Security Administration regulations define a person 55 or older to be in the "advanced age" category. C.F.R § 404.1563. Two cases cited by the Commissioner involved plaintiffs well below the threshold for "advanced age." *Rodriguez v. Comm'r of Soc. Sec'y*, 20-cv-

5268, 2022 WL 2965954, at *10 (S.D.N.Y. July 27, 2022)(Plaintiff was forty four); *Williams v.*

*Kijakazi*, No. 21 Civ. 5252, 2022 WL 18587778, at *18 (S.D.N.Y. Dec. 21, 2022)(Plaintiff was 49).

Since neither Plaintiff was a person of advanced age, Appendix 2 to Subpart P of Part 404's

requirement that the Commissioner identify a significant "range" of work did not apply, and

neither Court had to address *Lounsburry*.  In the third case identified by the Commissioner,

*Bavaro v. Astrue*, the claimant was 51 years old on the date of her disability, i.e., also not of

advanced age. *See* Appellant's Brief on Appeal, 2010 WL 3159246 (C.A.2).  Therefore, the Court

did not need to consider the regulations that apply to individuals of advanced age which

require a the ALJ identify a "range of work," nor *Lounsburry*'s holding.  *See Bavaro v. Astrue*,

413 F. App'x 382, 385 (2d Cir. 2011).  Finally, even in *Bavaro*, the ALJ had identified two jobs

that the Petitioner could perform, i.e., more than one occupation. *See* 413 F. App'x at 385.

Only a handful of district courts in this Circuit have directly addressed the holding in

*Lounsburry v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006), and in each case the court distinguished

*Lounsburry* because the plaintiff was not of "advanced age." *See Edwards v. Comm'r of Soc. Sec.*

*Admin.*, No. 22-CV-4345 (RWL), 2023 WL 6173526, at *22 (S.D.N.Y. Sept. 22, 2023) (declining to

apply *Lounsburry* "because it was dictated by the statutory language that applies only to

'individuals of advanced age," and Plaintiff was 49); *Wazeter v. Comm'r of Soc. Sec.*, No. 08 CIV.

479 (NRB), 2009 WL 2032076, at *7 (S.D.N.Y. July 6, 2009)(similar); *Dejesus v. Barnhart*, No. 06-

CV-6044 CJS, 2007 WL 528895, at *13 (W.D.N.Y. Feb. 13, 2007)(similar).

As a matter of first impression, this Court agrees with the reasoning of the Ninth Circuit,

and various district courts that interpret Appendix 2 to Subpart P of Part 404, Section 202.00(c)

to require the ALJ to identify more than a single occupation (for an individual of advanced age

with functional restrictions to light work) in order to demonstrate a "significant range of work"

exists for the individual in the national economy.  *See e.g.*, *King v. Kijakazi*, 22-cv-165-wmc,

2023 WL 110751 (W.D.Wis. Jan. 5, 2023); *Collins v. Colvin*, 204 F.Supp.3d 1046 (S.D.Iowa 2016);

*Roy H. v. Saul*, 547 F.Supp.3d  864 (D.Neb. 202).  The other courts in this Circuit that have

addressed *Lounsburry* all declined to dispute its reasoning, which this Court also finds relevant

to its conclusion here.  Unlike previous cases in this Circuit, Plaintiff here is a person of

advanced age, and the ALJ identified only one occupation that exists in the national economy

that she could perform following a flawed RFC determination.  Therefore, the Court finds the

ALJ erred by failing to identify a "significant range of work" exists for Plaintiff.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgement on the pleadings is

GRANTED and Defendant's motion for judgment on the pleadings is DENIED.  This case is

remanded for reconsideration by the ALJ consistent with this opinion.

**SO ORDERED.**

DATED:         New York, New York

February 17, 2024

_____

KATHARINE H. PARKER

United States Magistrate Judge